UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **00-6127**CR-DIMITROULEAS

18 USC 371
18 USC 1341
18 USC 1343

MAGISTRATE JUDGE
SNOW

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

STANLEY LERNER,

**Defendant.**



### INFORMATION

The United States Attorney charges that:

### COUNT I

### CONSPIRACY TO COMMIT
### MAIL FRAUD AND WIRE FRAUD

1.  From in or about June 1996, and continuing until in or about December 1996, the exact dates being unknown, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

STANLEY LERNER,

did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown to commit the following offenses against the United States:

    (a)   mail fraud, in violation of Title 18, United States Code, Section 1341; and

    (b)   wire fraud, in violation of Title 18, United States Code, Section 1343.



BACKGROUND

At all times material to this information:

2.  The defendant was a loan officer at Advantage Financial (hereafter referred to as "Advantage"). Advantage was a mortgage broker, and was in the business of finding a lender for a person who needed a loan to purchase real estate. During the course of funding a loan for the buyer, Advantage would send documents and other items to the lender and receive documents and other items from the lender, including funds for closing, by facsimile, wire transfer, and by commercial interstate carrier.

### Object of the Conspiracy

3.  It was the object of the conspiracy that the defendant and his coconspirators would submit and cause to be submitted false information and false documentation to Advantage in order to induce Advantage and its lenders to loan money to persons who could not otherwise qualify for a loan, in order that the defendant and his coconspirators could profit through the sale of real property.

### Manner and Means of the Conspiracy

4.  It was part of the conspiracy that coconspirators would and did obtain and finance the purchase of residential real estate.

5.  It was further part of the conspiracy that after the homes were purchased by the defendant's coconspirators they would spend some money improving the homes, and then enter into a contract to sell the homes for approximately double the price to unsophisticated buyers.

6. It was further part of the conspiracy that the buyers would not have sufficient income or assets or would have too many liabilities to qualify for a loan or to pay the down payment and closing costs to purchase the property.

7. It was further part of the conspiracy that coconspirators, in need of financing for the buyer, would come to the defendant who would and did complete or caused to be completed loan applications for the buyers at Advantage, which loan applications contained false information.

8. It was further part of the conspiracy that the defendant and his coconspirators would and did submit or caused to be submitted with the loan application to Advantage false documents in order to qualify the buyers for their loan.

9. It was further part of the conspiracy that, if the income of a buyer was insufficient to qualify for a loan, the defendant's coconspirators would and did prepare or caused to be prepared false W-2's and pay stubs which were submitted to Advantage on behalf of the buyers.

10. It was further part of the conspiracy that, if the income of a buyer was insufficient to qualify for a loan, coconspirators caused to be prepared Form 1040's which falsely stated the annual income of the buyer and submitted them to Advantage on behalf of the buyer.

11. It was further part of the conspiracy that, if the assets of a buyer were insufficient to reflect the ability to make a down payment on a loan, coconspirators would and did create or caused to be created a "gift letter," which falsely represented that the down payment had been gifted to the buyer by a relative, and would then submit the fraudulent "gift letter" to Advantage on behalf of the buyer.

12. It was further part of the conspiracy that coconspirators would and did create bank statements or alter existing bank statements which would show balances for the buyer or a person gifting the down payment to the buyer, either greatly over-representing the true balance in the account or a substantial balance in a bank where the person had no account, and would then submit the fraudulent bank statements to Advantage.

13. It was further part of the conspiracy that, if the buyer had little or no credit history, coconspirators would and did create or caused to be created credit reference letters from Bell South, Florida Power and Light and other businesses falsely stating that the buyer had an excellent credit history, and would then submit or caused to be submitted the credit reference letters to Advantage on behalf of the buyer.

14. It was further part of the conspiracy that in order to prevent Advantage from uncovering the false information, such as the false Form W-2's, false bank statements, and false rental information, coconspirators would and did include names, telephone numbers and addresses in the loan applications submitted to Advantage of persons who would, at the direction of coconspirators, provide false verifications as to the employment, bank deposits or rental information of the buyers to Advantage.

15. It was further part of the conspiracy that the defendant would and did conspire with his coconspirators in order that the written verification of employment forms and verification of deposit forms would be given directly to the defendant or his coconspirators instead of being mailed directly to the employers or the banks, which forms would then be falsely completed and sent back to Advantage.

## OVERT ACTS

16. In furtherance of the conspiracy and to effect the objects thereof, at least one of the following overt acts, among others, was carried out by at least one co-conspirator in the Southern District of Florida, and elsewhere:

    A. On or about October 7, 1996, defendant submitted a loan application to Advantage. The loan application falsely reflected that Calvin Bennett had $5000.00 in his account at NationsBank.

    B. On or about October 23, 1996, defendant caused a fraudulent verification of deposit purporting to be from NationsBank to be sent by facsimile to Advantage claiming that Calvin Bennett had $4,891.03 in his account at NationsBank.

    C. On or about October 25, 1996, defendant caused the closing documents for the loan for Calvin Bennett to be sent by commercial interstate carrier to Southern Financial, Sweeny, Texas.

    D. On or about October 18, 1996, defendant submitted a loan application to Advantage for William and Edna Lewis.

    E. On or about October 22, 1996, defendant caused a fraudulent verification of deposit purporting to be from NationsBank to be sent to Advantage claiming that William and Edna Lewis had $5,189.74 in their joint account at NationsBank.

    F. On or about November 6, 1996, defendant caused the closing documents for the loan for Edna Lewis to be sent by commercial interstate carrier to Union America Mortgage, Tarpon Springs, Florida.

    G. On or about June 27, 1996, defendant submitted a loan application to Advantage. The loan application falsely reflected that Johnny Donfred had $100,000 in his account at Savings of America.

    H. On or about July 23, 1996, defendant caused Chase Manhattan Funding to send a facsimile from New Jersey notifying Advantage that it would fund the loan for Johnny Donfred.

  All in violation of Title 18, United States Code, Section 371.

_[signature]_
THOMAS E. SCOTT
UNITED STATES ATTORNEY

_[signature]_
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA          CASE NO. _____

v.                                **CERTIFICATE OF TRIAL ATTORNEY\***

STANLEY LERNER _____         **Superseding Case Information**:

**Court Division**: (Select One)    New Defendant(s)     Yes ____  No ____
                                    Number of New Defendants  ____
___ Miami  ___ Key West             Total number of counts    ____
_X_ FTL    ___ WPB  ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No) __No__
   List language and/or dialect  __English__

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                        (Check only one)

   | | | | | | |
   |---|---|---|---|---|---|
   | I  | 0 to 5 days    | _X_ | Petty   |      |
   | II | 6 to 10 days   |     | Minor   |      |
   | III| 11 to 20 days  |     | Misdem. |      |
   | IV | 21 to 60 days  |     | Felony  | _X_ |
   | V  | 61 days and over |   |         |      |

6. Has this case been previously filed in this District Court? (Yes or No) __No__
   If yes:
   Judge: _____     Case No. _____
   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) __No__
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: __99-4657-SNOW; 97-4601-SNOW; and 97-4609-SNOW__
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____  District of _____

   Is this a potential death penalty case? (Yes or No) __NO__

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 1999? _X_ Yes ___ No  If yes, was it pending in the Central Region? _X_ Yes ___ No

   JEFFREY N. KAPLAN
   ASSISTANT UNITED STATES ATTORNEY
   Court Bar No. A5500030

\*Penalty Sheet(s) attached                                       REV 4/7/99
N:\udd\hpantale\kaplan\LERNER\INfPKG2.wpd

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: __STANLEY LERNER__     No.: _____

Count #1:
Conspiracy to commit mail fraud and wire fraud, all in violation of 18:371

*Max Penalty: 5 years' maximum imprisonment; $250,000 fine

Count # :

*Max Penalty:

Count #:

*Max Penalty:

Count # :

*Max Penalty:

Count # :

*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

REV 12/12/96